We'll begin with our first case today, United States v. Chatmon and Mr. Burnham. Good morning, Your Honor, and may it please the Court, my name is Charles Burnham, and I, along with my partner Eugene Gorokov, who is at Council Table, represent the appellant Frank Chatmon in this criminal case from the District Court in Alexandria. This is the second interlocutory appeal to this Court following the remands about a year ago involving the issue of forced medication. In this appeal, Mr. Chatmon brings two assignments of error to the District Court's order. First, we contend that the District Court lacked authority to order forced medication because the indictment ought to have been dismissed prior to that on a variety of grounds. And secondly, we contend that the cell findings themselves, particularly those with respect to Prong 3, which was the subject of the remand, were clearly erroneous. The government does not contest this Court's jurisdiction as to the second assignment of error on an interlocutory basis. They do object to this Court's jurisdiction over the first assignment of error. I'm happy to take direction as to whichever aspect of this case the Court is most interested in, but failing that, my plan was to address the jurisdictional question first. That's your argument. You can go about it any way you want. Thank you, Your Honor. In that case, I'll begin with the jurisdictional question. And we'll adjust you as you go along. I appreciate that, Your Honor. We contend that this Court has jurisdiction to hear Mr. Chapman's due process and speedy trial claims. Why isn't the speedy trial waived? Why isn't the speedy trial waived? Your Honor, it's not waived because Mr. Chapman has preserved it continuously starting with his arraignment in this case. He preserved it orally at several of the status hearings in the case, and he's filed two written motions that were fully briefed and argued to the district court. Your Honor, I might be referring to… Did you raise it in the prior appeal? We did not. That's my point. We contend that despite the fact that this claim was not raised in the prior appeal, that this Court nonetheless does have jurisdiction to consider it this time around because our claims this time depend on facts and new developments in the law, which were not in existence at the prior appeal. So you raised it again before the Court this time? Oh, we did. Ron Rehman, we raised it again. But the mandate rule, couldn't that have… that speedy trial issue, couldn't that have been addressed before? I think theoretically it could have. The reason we did not waive it is because the speedy… we had a duty to preserve it before. But in our opinion, the claim did not become as serious as it is now to the point… I don't know about what as serious means. Was it right to be raised on appeal before? I don't… And if it was not, tell me why it was not. Your Honor, as a theoretical matter, I believe this Court could have exercised jurisdiction to consider the claim. I think that's correct. What troubles me is we're not going to… you're raising a speedy trial claim, but there's not going to be anything speedy about criminal proceedings if we recognize one after another after another of things which are subject to the collateral order doctrine. We're going to be swamped by interlocutory appeals which do no more than address a tiny piece of a case. And the whole purpose of the finality rule is to preserve questions after final judgment and criminal cases sentencing. So we can have the whole thing up here in one business. And it seems to me what you're trying to do is just fragment things hopelessly. And, you know, it's clear that the forcible medication, a cell claim, is subject to an interlocutory appeal. That's well settled. But I thought it was equally well settled that a speedy trial claim or due process claim in this instance didn't present a case of irreparable injury. And that could be – the reason it doesn't present a case of irreparable injury is it can be resolved after a final judgment. That's absolutely correct, I believe, in cases other than those involving false medication. I believe Your Honor is absolutely correct that the rule of finality absolutely counsels against entertaining speedy trial at this stage and many decades of precedent would confirm that. The reason why I'm suggesting that this case and forced medication cases are different is I believe it's, first of all, at least of the Second Circuit, and I believe just prudentially it won't open the floodgates to that many interlocutory appeals because by their very nature, forced medication orders should be and in fact are rare. In the 10 years or so since the cell decision was handed down, this court has considered perhaps a dozen forced medication orders. The Maga Suva case in the Second Circuit is the only case I could find involving a – We've always kind of resisted, and I think the Supreme Court has resisted this sort of inexplicably intertwined doctrine. Qualified immunity of interlocutory appeals, we've been discouraged from just sweeping all sorts of intertwined questions into the qualified immunity appeal. And this – I don't understand why we wouldn't be doing the same thing here. Don't we have a battery of precedent that we would be overruling, beginning with the Supreme Court case in McDonald and then continuing with our own cases in Farabee and Buchanan? I mean, I just worry about the kind of – almost as a phalanx of precedents. There's a lot of resistance, I think, these days to expanding the collateral order doctrine. Your Honor – And those precedents are pretty clear. Isn't McDonald pretty clear? It is very clear in a typical case, and I want to be clear that we're not asking this court to overrule those precedents. We're asking this court to – It would be a de facto overruling. I think it would be – Of course, none of us are ever going to say we are overruling a Supreme Court case, but you're asking us for a de facto overruling. With all due respect, I think it would be a fairly clear-cut distinguishment of those cases because in this case, there's a risk of irreparable harm that does not exist in 99 percent of speedy trial situations. The typical criminal defendant who's convicted in violation of his speedy trial rights can have that harm remedied very easily by this court. The defendant who's wrongfully, forcibly medicated has his very thoughts invaded by the government. Well, whether he has or whether he hasn't depends on the merits of that, which we're perfectly able to address. But one of the things that concerns me is your client – I mean, most people want a fair trial. And your client is doing everything possible to ever – to avoid ever being trialed. We were sympathetic to the claim that there ought to be a restoration of competency to competency in the least drastic fashion. But there comes a point after all of these appeals and everything, it's like, well, I just don't ever want to be – ever want to be tried. I mean, we've been over backwards to respect your claim earlier. But at some point, he has to be tried. I mean, people – I thought a fair trial was the hallmark of our system, not I'm not going to ever be tried. If there's a means to restore someone to competency, if there's not a means to restore someone to competency, that's something else again. But this is what the district court looked into. We contend that there's a very clear means presented, especially by the new evidence gathered since the remand to restore Mr. Chapman to competency. We contend – You agree that this is up here on a clearly erroneous standard. Well, certainly. Certainly. And I agree that clearly erroneous review involves some deference to the district court. But as this court has said on many occasions, it's not toothless. And this is a case we contend very strictly. Didn't the district court do exactly what we told the district court to do? I don't believe it did, Your Honor. What did it do? Did it do procedurally what we told it to do to address the third factor? I think procedurally, yes. Did the court do that? Yes. And so the court did what we asked. You just say that the court made an error in trying to do that? Yes.  The court – What is your greatest argument of error? The court failed to consider substantial and we believe compelling evidence that weighed against the ruling the court made. So much so that the court had to rule in your favor, or was it just strong evidence that the court had to consider? We believe the court – the evidence should have compelled the court to rule in our favor, very much so. The court did consider all the evidence. It considered all the testimony of the three experts and additional testimony of the experts, and you had the opportunity to cross-examine those experts. We did. So what is it the court did not do, and what is it you want us to do now? I'd like to overrule the district court because, one, the district court did not consider properly. I mean, the order does recite that the district court read the depositions, but it doesn't go into any degree of detail, let alone the degree of detail requested by this court's first Chapman decision with respect to Mr. Chapman's dramatic improvement upon being released from solitary confinement and the need for an up-to-date competency evaluation, which we have yet to have. Those are the two things the district court very clearly did not consider. Well, if the court said I've read the depositions and I've come to this conclusion, can't we also read the depositions and see if the court was correct in coming to that conclusion? I think this court can. So that – so you think it's error just because he didn't lay out every chapter and verse and every possible argument on all sides on the testimony? You don't think that, do you? The court can short – has to be able to shorthand it somewhat, correct? There has to be evidence. That's right. Isn't that correct? The short – the district court has to be able to shorthand some of it. We said before, basically, it had done a little too much shorthand and we want more information. And it has more information on it now. And the information it sort of craves reference to, we can read that and see that as well, can't we? Certainly. And decide whether or not that evidence does comport with his decision on it. I do think the court could do that, certainly. And respectfully, I think the evidence would compel a conclusion in this court as well that Mr. Chapman, if he's not competent now, he's very close to it. The depositions by the government's experts describe him in terms that make him appear as, frankly, the ideal client. I don't think it's an exaggeration to say not only is he competent, but he seems to be functioning at a very high level. He's having logical goal-directed conversations. He's asking questions about – I thought that the expert witnesses actually said that they – that this gentleman was still receiving satellite images within his mind and everything. And I'm not sure you want to drag someone into trial if they've got that kind of situation where their satellites are beaming who knows what into their minds. Because then you see, we would face another appeal, which would say that you forced an incompetent defendant to go to trial. I mean, that's the other danger is you have got to have somebody competent to stand trial so he's able to communicate with his attorney and understand what the witnesses are saying. And what I gleaned from the experts was that the time in the open – more open community had maybe brought some improvements, but the basic cytosis was still operative. I think the answer to Your Honor's question is to – is that this court's precedents make a very clear distinction between mental illness, even very serious mental illness, and competency. If you think he's the ideal client, did you just say that? In the terms he's described by the psychiatrist? I'm asking you. Do you think – because you said the evidence that was presented compelled that view. It compels the view that he's an ideal client? Because if that's true, that's your position, then you waive any claim about another competency hearing, correct? Because he's the ideal client. You stand here and say he's competent. There's no question about it. So you don't – then you waive any claim for another competency hearing. I want to answer Your Honor's question. Well, I want you to answer it. That's why I asked you. I see my time has expired. I don't want to take too much, but answer that very directly for me. My position is that – Listen, no, just answer this. Did you say that he's the ideal client or close to the ideal client? Is that correct? Is that what you said? I said close to. Does that include being competent? That ideal client in your mind that he is, does that include being competent? Yes or no? I think that's what the evidence suggests. Well, your answer would be yes. I can't go that far. The most – as far as I can go is that the evidence suggests that's a very strong possibility. That's not what you said. You said the evidence was so clear that the court had to find what you won't say. I think that's right. I would maintain that view. Your view is the court has to find something that you don't even believe. No, no, no, no. I don't think the court had to find that he was competent. The court had to find that there were avenues open that either had or could in a reasonable time restore him. I stopped short of saying he's competent. I think he might be, but I can't go quite that far, and I'm not trying to – What's a reasonable time? It's been three years. I would view a reasonable time as – I mean there's no bright line rule, but I would think – I mean our view is it should have been dismissed a long time ago on speedy trial grounds. But a reasonable time would be something measured in weeks and months, not more years I think is the best answer. Thank you, sir. Thank you, Your Honor. Mr. Coat. May it please the Court. The district court did not clearly err in making findings on either of the two questions that this court wanted the district court to address on remand. The court tried the contempt option, and the defendant did not take medication after a period of contempt. Could you speak up just a little bit or maybe raise the microphone a little? Sure. And the district court did not clearly err in considering the two other less restrictive alternatives of group therapy and being the defendant staying in the open unit. As recently as September 4th and 5th, 2013, which was about a month before the deposition of Dr. Walden Weaver and Dr. Lucking, the defendant said in a meeting with the two doctors that he was – that there were satellites responsible for the voices that he heard, and that the defendant insisted that it was not a result of mental illness, and he brought up a book, Behold the Pale White Horse, that he said that if they Googled that, they would find evidence that indeed satellites were causing the voices he heard. And as defense counsel acknowledged, Behold the Pale White Horse is a book about UFOs, conspiracies, and that sort of thing. So the record – Do you think the evidence compels the result the judge met, or do you think that short of that, that whatever – if it wasn't compelled, it clearly was justified under our standard of review to affirm the judge below? Which is it, do you think? It comes pretty close to compelled if it's not compelled, but it certainly isn't clearly erroneous. When there are two permissible views of the evidence, the district court's choice between them can't be clearly erroneous, and that would apply here. Since there's some evidence that he did improve when taken out of solitary confinement, what about the second competence evaluation? What would be the government's problem with that? Well, there can always be, I think, when you've got an interlocutory appeal, a claim that things have changed. And so you could kind of go on forever with an appeal and then a let's check and see what the competency is like now. And under the scheme set forth, when you do medicate somebody, you're going to have to have a finding by the doctors that the person has become competent. And Dr. Lucking testified that sometimes that can – he's had a person respond to a single dose of haldol, and I've had people respond very slowly and take four, six, eight months. That was at Joint Clinics 2018. So what about a competency hearing before medication? Another competency hearing now before medication? I think that that's going to happen. The doctors say that they first give somebody a choice when they are facing medication, and if the evidence is such that the person doesn't need medication, I don't think that they're going to medicate them. The terms of the order that say involuntary medication are to restore the person to competency. And if the doctors think that the person is competent, there is, I don't think in those orders, legal support to medicate the person, because the order is to medicate them, to make them competent. You assert they do what, a shorthand competency exam before they give the medication? I mean, I don't understand your argument. That's what you have to be saying. Because just to say to restore, it says to restore, that looks to what happens after the medication. It doesn't look specifically at the state before the medication. Isn't that correct? I would distinguish the doctors are clear that they get an order from the court under 4241 to make a competency determination that that's a legal process that you go through where you create a report, their deadlines, all that. And it requires a new order from the court for them to do that again. So after I thought in the hearing and your position was that it would be after the medication. And that, obviously, you would want to see what the effect of the medication was on competency. But you'd have to before he was sent to trial, you'd have to have to be some determination that the individual standing trial was in fact competent. But that's an entirely different thing from having yet another hearing and another examination prior to the medication. We sent this thing back to find out if there were less drastic alternatives. No, the district court did what we asked. It didn't get anything confused as a matter of law. It understood that the standard was a clear and convincing one. It understood what the inquiry was, which was the third cell factor and the less and less intensive alternative. And proceeded very cautiously on it. Now, where district court doesn't misapprehend the burden of proof or the standard of proof or the object of proof. He did what we asked him to do. And I just can't see an endless cycle of competency exams, appeals, competency exams, appeals. But I would, after the medication, there would certainly have to be some inquiry into whether the medication worked. But all we are here now, we're up here on a very, very narrow question, which is whether the district court clearly erred in finding that there were no less drastic means, no alternative means of restoring him the competence to stand trial. Now, that's all we're up here. Was it clearly erroneous? His findings with respect to the third cell factor. That's all this before. I agree with that completely. And it is, I think. But that's not what you were saying just then. But you were saying, at least I thought in response to a question, I think you were suggesting that the doctor before they get the medication would have to make some determination of competency premedication. Isn't that what you were saying? I'm saying two things. One. I said, isn't that what you were saying? Yes. You were talking about whether or not we address it. You were talking about another assessment of competency before the medication was administered, correct? Correct. And I think it would be, well, let me go back to Judge Wilkinson's point. When the district court made a finding that there are no less restrictive alternatives that would make this person competent. It's inherent in that and it's expressed in the court's finding that the man is still not competent. Because if you were competent, you wouldn't need to take any steps. That's the point. You argued, but you argued the opposite of that. You argued, I think you did, the premise of your argument was that there was a possibility that he would not need the medication even now. Isn't that correct? Well, what I'm responding to is, let's suppose during the duration of this appeal, that this defendant did become competent against all odds. And the government is not suggesting that these doctors would just medicate the guy anyway at that point. There doesn't need to be further. Why do we need to get into all of that? That just, that isn't the subject of appeal. There's nothing preventing the district court if it wants or the doctors from offering an opinion or whatever. But we're up here on a very narrow and discrete issue. And I don't understand why in the world we're trying to apply some kind of crystal ball to the way proceedings are going to play out. I agree. And the district court is, these issues could be, you know, addressed on any kind of… You may agree with that, but that is not what your argument was in response to a question. You argued in response to a question, not that this wasn't before the court, but that in fact, basically the court can be comfortable because there's going to be at least a shorthand competency test done, not test, but assessment done. That's what you argued to us, wasn't it? Yes. I take that, I take that because at least you, I take that to suggest that the government thinks there is something in a play between another competency test and medication, even as we go forward. Is that correct? There has to be. Yes, I mean… And so, yeah, but you were suggesting that the doctors would do something like that. Is the answer, that was your argument. Is the answer that they can ask the district court for another competency test and the district court then would decide whether or not there's a basis to do it? Is that the resolution of that issue? I don't think it's necessary to do a full competency evaluation and start over with 4241 and that whole timeline process. Your position is we can't script the future on this appeal. I agree with that. But your position was, and don't worry about the future because the doctors are going to check into it anyway. That's what your position at least was. No, I… I'm not saying it's not necessary. I'm not saying it's necessary, but I didn't argue. That's an argument you made. Isn't that correct? Yes, and I don't think that a defendant is left without any recourse at all when an appeal has taken seven months, say… And what is that recourse? The recourse is to raise that there are circumstances that make him confident. Raise it to whom? The district court. That's what I just asked you. I think Judge Fulkerson suggested that and I asked you point blank. Is that what the government thought then the resolution would be? If the defendant believes circumstances have changed to perhaps now make him confident, he just could move the court for another competency hearing, full-blown hearing, correct? I think he could, yes. Right, and the court would just decide, the district court, not us, would just decide at that point whether or not such a competency hearing is necessary or required, correct? Yeah, I agree with that. I don't, unless the court has any questions. We'd ask that the court affirm. Mr. Bynum? A couple points, I think, in response. I think the government's argument was well taken that even they see, in part, of course, that even they see that the circumstance at least suggests that another competency evaluation is something we would all want to have. And in fact, another competency evaluation is not even the correct way to describe it because the record in this case shows that the first attempted competency evaluation was only completed two-thirds of the way through because at that point… Do you think the government suggested that another one is needed or just that another one could be available under the right circumstances if so decided by the district court? Well, I mean, I don't want to speak for the government, but the fact that they're talking about it suggests to me that there's a question out there is before we start strapping Mr. Chapman to the table and injecting him, we want to make really sure he's competent, which wouldn't take very long, hasn't even been done even… We don't need forcible medication because he's competent already. So we don't need any forcible medication. And then on the other hand, you say, well, we need another competency. That's a bit of a tension that underscores for me the inadvisability of trying to range all over the prairie in this interlocutory matter. I mean, interlocutory appeals are supposed to be precisely and hopefully narrowly focused. Not a reason for us to try to put ourselves in the chair of the district court in terms of what might or might not happen before trial. I understand Your Honor's question, and I'm not trying to have it both ways. I could try and state my position a little more precisely if it would help. My position in the district court in here was that the evidence strongly suggested that Mr. Chapman either was very close to competence or had achieved it. And my suggestion to the district court is that it would be prudent before setting a trial date to get at least one full competency assessment using the tool that the psychiatrists have. Maybe that's your motion. Well, I believe I had to put the government to their burden. But you're asking us to become district judges and make all sorts of rulings and respond to all kinds of pretrial matters that are just pretrial grist of the mill for the district court. And that's my problem, is you can't use an interlocutory appeal to make appellate judges arbiters of what ought to be pretrial motions. That doesn't seem to me to be right at all. I'm not asking this court to micromanage Judge Hilton, but I do think this court needs to take into account the procedural happenings below to answer the question of whether all alternatives have been sought. Is there another tension in your argument between speedy trial generally, we want a trial, we want a trial, and making motions that necessarily delay a trial? Well, Mr. Chapman has to – I, on Mr. Chapman's behalf, have to assert his constitutional rights. I mean, if we wait – I didn't say that, did I? Did I say anything about that? I said, isn't there a tension in your argument between asking that he be protected because he didn't get to his trial fast enough, and you make that on his behalf? But you also make a motion or suggest a motion on his behalf that necessarily will delay the trial. I don't believe there is a tension because – There seems to be a tension. Respectfully, I don't believe there is because so many of the delays, so many of the factors which drag this case out as long as it has been are due to different things that the government should have done but didn't. There's chronic problems transporting – I didn't say the application of it specifically, but don't your motions, haven't they, or don't they completely – don't they add to the time? It may not add to the time in the sense that you would lose some speedy trial assessment, but don't they add to the time? They add to the time for valid reasons. The speedy trial cases distinguish between valid delays, neutral delays, and invalid. Mr. Chapman's motions did result in delay, but for very valid reasons. The government's delays were, I would suggest, at best neutral. The lack of staff at Butner, the problems with the competency evaluation the first time around. These are the types of things we're relying on for our speedy trial and especially the due process arguments.  All right, Mr. Burnham, you're court appointed and really appreciate your services very much. We'll come down. Thank you, Your Honor. Thank you, counsel. We'll proceed directly into our next case.
judges: J. Harvie Wilkinson III, Dennis W. Shedd, Stephanie D. Thacker